UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN JAMES ALBERT,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM & ORDER**
21-CV-04963 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Steven James Albert commenced this Federal Tort Claims Act ("FTCA") action against Defendant United States, alleging he was injured when he slipped and fell on icy steps in front of the entrance to the United States Post Office located at 10628 Queens Boulevard in Forest Hills, Queens (the "Forest Hills Post Office" or "FHPO"). *See* ECF No. 2 at ¶¶ 20–24 (Complaint).[1] Defendant moves for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is DENIED.

## BACKGROUND

The following facts are drawn from the parties' Rule 56.1 statements and exhibits and construed in a light most favorable to the non-moving party, Plaintiff. Unless otherwise noted, these facts are undisputed.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to deposition transcripts, where the Court cites to the original page number on the native document.

*A.    The Parties*

Plaintiff is a customer who frequented the FHPO on numerous occasions prior to the incident at issue.  *See* ECF No. 37-1 ¶ 8 (Consolidated Rule 56.1 Statement).  Defendant owned the FHPO and the premises on which the post office is located.  *See id.* ¶ 80.  At all times relevant to this action, FHPO employees worked "round-the-clock" on the premises, but the post office opened for customers at 7:00 A.M. on weekdays and the service window opened at 9:00 A.M.  *See* ECF No. 36-3 at 19:20–24, 26:12–22 (Deposition Testimony of Peter Celik).  There was only one entrance for the public, with a set of three steps leading up to the door.  *See* ECF No. 37-1 ¶¶ 12–13.

*B.    Snow and Ice Removal Arrangements*

The FHPO's internal rules and regulations characterized timely removal of snow and ice as "an absolute necessity to avoid serious injury to customers or employees."  *Id.* ¶ 65.  These rules mandated that, if possible, snow and ice removal should begin before the snow and ice is walked on.  *Id.* ¶ 66.  Defendant's supervisor safety handbook required FHPO supervisors to "establish snow and ice removal plans where necessary" and "pay particular attention to areas where customers and other pedestrians may slip and fall."  *Id.* ¶ 67.

The FHPO had two employees responsible for removing snow or ice from the steps in front of the entrance.  *See id.* ¶ 27.  These employees were Peter Celik and Douglas Jamie, custodians whose typical working hours were 7:00 A.M. to 3:30 P.M. and 9:30 A.M. to 6:00 P.M., respectively.  *See id.* ¶¶ 23, 24, 27, 37.  The FHPO provided them with snow removal equipment such as salt, salt spreaders, several shovels, ice picks, and snow blowers.  *See id.* ¶ 45.  If Mr. Celik's manager heard there would be "bad weather or snow or icy weather," the manager would occasionally instruct Mr. Celik to arrive earlier than his normal scheduled hours to

2

perform snow removal. *See id.* ¶¶ 42–44. If Mr. Celik knew there was going to be overnight snow, he would "do a salting to make sure nothing happens overnight" and have snow removal equipment ready and available for use. *Id.* ¶ 29. Mr. Celik testified that when undertaking snow removal, he would start with "obviously the steps first and then the platform and the ramp; pretty much the whole front area," and that it would take him between three to five minutes between swiping in to work and starting snow removal efforts at the steps. *See* ECF No. 37-3 at 76:3–77:11 (Deposition Testimony of Peter Celik).

  C.  *The Incident*

In the early morning of February 28, 2019, an overnight winter storm of light snow, sleet, and freezing rain created slippery conditions in Queens. *See* ECF No. 37-1 ¶¶ 4–5. Precipitation ended by 5:06 A.M. *See* ECF No. 35-1 at 5, 14; ECF No. 36 at 16. Weather forecasts in the days leading up to February 28 had warned of the incoming storm and slippery conditions. For example, at approximately 2:59 P.M. on the day before, the National Weather Service ("NEWS") issued a Special Weather Statement for Queens County, warning:

> As weakening low pressure approaches from the west and a weak secondary low develops off the Mid Atlantic coast tonight, light snow is likely to redevelop late this evening, then could mix with sleet and change to spotty light freezing rain or freezing drizzle before ending late tonight. Less than an inch of snow accumulation is expected, and a light glaze of ice is possible. If the threat for more widespread freezing rain increases overnight, a winter weather advisory may eventually be issued for portions of the area. Be prepared for slippery conditions and use extra caution when driving on snow covered or icy roads.

ECF No. 37-1 ¶ 4.

On February 28, 2019, Mr. Celik was scheduled to begin work at 7:00 A.M., but he did not arrive until around 7:35 A.M. *See id.* ¶¶ 23, 25. Mr. Celik does not recall whether he was directed to come in earlier than his normally scheduled hours that day. *Id.* ¶ 50. Nor does he recall whether he knew it was going to snow overnight and into that morning. *Id.* ¶ 52.

3

That morning, Plaintiff went to the FHPO to drop off mail. *See id.* ¶¶ 6–7. Plaintiff testified that the weather was chilly but clear, and that it was not actively raining or snowing when he was on his way to the post office. *See id.* ¶ 9; ECF No. 35-4 at 46:5–14, 47:13–18 (Deposition Testimony of Steven Albert). He recalled noticing some fresh snow on the ground and may have seen some ice patches in the park. *See* ECF No. 37-1 ¶ 9; ECF No. 35-4 at 48:8–16. As he walked up the steps to the FHPO's entrance, he saw a light dusting of snow but did not see ice. *See* ECF No. 37-1 ¶ 10.

At approximately 7:15 A.M., after dropping off his envelopes, Plaintiff walked out of the post office and slipped on the steps, injuring his right ankle. *See id.* ¶¶ 6, 11–14; ECF No. 35-4 at 62:3–23, 68:8–10, 72:9–24. He described his right foot going out from under him and that he "wound up on the sidewalk" with his right ankle "pinned up underneath" him. *See* ECF No. 35-4 at 62:3–12. At that point, he glanced at the railing and saw a thick patch of ice, "about the same [size]" as his foot, that had been covered by the light dusting of snow. *See id.* at 54:23–55:7; ECF No. 37-1 ¶¶ 15, 35. Plaintiff did not see ice before he fell. *See* ECF No. 37-1 ¶ 16. Walking down the steps, he took his time and held onto the railing. *See id.* ¶ 14; ECF No. 35-4 at 56:11–13; 58:22–59:5. He "wasn't looking for ice patches," he "was just looking for places to step." ECF No. 37-1 ¶ 16; ECF No. 35-4 at 57:17–58:4.

A bystander who Plaintiff recognized helped him stand up. *See* ECF No. 37-1 ¶ 17; ECF No. 35-4 at 67:4–21. Plaintiff did not notify anyone at the FHPO that he had just fallen. *See* ECF No. 37-1 ¶ 18; ECF No. 35-4 at 73:13–18. He walked in pain to a nearby diner to get breakfast and ice his ankle. *See* ECF No. 35-4 at 67:25–68:22. He then crossed the street to the bank where he worked, showed the bank guard his swollen ankle, and explained he didn't think

4

he could work that day. *See id.* at 68:23–69:15. Plaintiff then drove home and called his manager to let her know too. *See id.* at 69:16–71:12.

Plaintiff initially thought his ankle injury was a sprain, but it later proved to be more severe. *See id.* at 73:13–18. By the next day, he could hardly stand upright. *See id.* at 71:13–18. He testified that the fall caused two fractures and left him unable to return to work for approximately five months. *See id.* at 71:19–72:24.

D.  *Procedural History*

Plaintiff commenced the instant action under the FTCA on September 2, 2021, asserting one claim of negligence. *See* ECF No. 2 at 2. Defendant answered the Complaint on November 8, 2021, *see* ECF No. 10 (Answer), and filed a pre-motion conference letter in advance of a proposed motion for summary judgment on December 20, 2024, *see* ECF No. 32 (Pre-motion Letter). The summary judgment motion was fully briefed on March 28, 2025.[2]

## **LEGAL STANDARD**

Summary judgment is appropriate where the movant meets its burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

---

[2]   The motion papers consist of: ECF No. 35 (Defendant's Notice of Motion); ECF No. 35-1 (Defendant's Memorandum of Law); ECF No. 35-2 (Defendant's Rule 56.1 Statement); ECF Nos. 35-3–35-12 (Defendant's Exhibits); ECF No. 36 (Plaintiff's Opposition), ECF No. 36-1 (Plaintiff's Rule 56.1 Counterstatement); ECF No. 36-2–36-9 (Plaintiff's Exhibits); ECF No. 37 (Defendant's Reply); ECF No. 37-1; ECF Nos. 37-2–37-3 (Defendant's Reply Exhibits).

(1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). A nonmoving party asserting that a fact is genuinely disputed must support the assertion by citing to materials in the record or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## DISCUSSION

Plaintiff alleges that Defendant was negligent in its failure to inspect and maintain the premises in a reasonably safe condition. Defendant moves for summary judgment, arguing that Plaintiff cannot establish a *prima facie* case of negligence, particularly with respect to a breach of a duty of care. ECF No. 35-1 at 5.

Under the FTCA, if a government employee commits a tort, the United States shall be liable for money damages "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007). In an FTCA case, federal law governs the procedural aspects—like the burden of proof on a motion for summary judgment—and state law governs the substantive law. *See, e.g., Monroe v. United*

6

*States*, 415 F. Supp. 3d 315, 317–18 (E.D.N.Y. 2019).  Here, because the underlying incident occurred in Queens, the substantive law of New York applies.

Under New York law, to succeed on a negligence claim, a plaintiff must establish:  "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (NY. 1985)).  In a slip-and-fall premises liability case, the plaintiff must demonstrate:  "(1) that a hazardous or dangerous condition existed; (2) that the defendant either created the condition or had actual or constructive knowledge of it and failed to correct it within a reasonable time after acquiring such knowledge; and (3) that the plaintiff's injury was proximately caused by the hazardous or dangerous condition." *Coleman v. United States*, No. 19-cv-2149, 2025 WL 888463, at *5 (E.D.N.Y. Mar. 21, 2025) (collecting cases).  Another way a plaintiff may establish premises liability is "if the dangerous condition would have been discovered through a reasonable inspection, but defendant failed to conduct such an inspection." *Cuello v. Target Corp.*, No. 22-cv-2013, 2023 WL 4763234, at *4 (S.D.N.Y. July 26, 2023) (explaining that even where a plaintiff cannot demonstrate creation of a hazard, actual notice, or constructive notice, "plaintiff may still be able to establish premises liability where he or she can demonstrate a defendant's failure to reasonably inspect the premises").

"It is well-settled in New York that a property owner or possessor may not be held liable for snowy or icy conditions unless it had actual notice, or in the exercise of due care, should have had notice of the conditions, and had a reasonably sufficient time from the cessation of the precipitation to remedy the conditions caused by it." *Silverman v. United States*, No. 04-cv-5647, 2008 WL 1827920, at *13 (E.D.N.Y. Mar. 28, 2008) (collecting cases).  "When

7

determining whether a defendant exercised reasonable or due care, an awareness of the realities of the problems caused by winter weather must be taken into account." *Id.*

Here, Plaintiff argues that there is a genuine factual question as to whether Defendant had constructive notice, *see* ECF No. 36 at 13, and that regardless of notice, Defendant had a duty to conduct reasonable inspections of the premises and failed to do so, *see id.* at 10. Plaintiff does not claim that Defendant created the hazardous conditions or that it had actual notice. The Court has reviewed the record, including the Consolidated Rule 56.1 Statement, deposition transcripts, affidavits, and other exhibits that the parties submitted in support of, or in opposition to, the motion. The Court finds that there are genuine disputes of material fact as to whether: (i) the ice on the steps was visible and apparent; (ii) the ice existed for a sufficient length of time for post office employees to discover and remedy it; and (iii) Defendant's failure to inspect the front steps in the two hours prior to Plaintiff's fall was unreasonable.

## I. Constructive Notice

For there to be constructive notice in a slip-and-fall case, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit a defendant's employees to discover and remedy it." *Doyle v. Tops Markets, LLC*, 234 A.D.3d 1339, 1340 (N.Y. App. Div. 2025). Constructive notice may also "be attributed to a defendant who had actual notice of a recurring problem in the location the accident occurred." *Tuthill v. United States*, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003). Either way, constructive notice requires more than the mere existence of a dangerous condition or general awareness that a dangerous condition may be present. *See Silverman*, 2008 WL 1827920, at *14.

### A. *Visible and Apparent*

Defendant argues that it could not have had constructive notice of any icy conditions on February 28, 2019, because there is no evidence that the ice patch on which Plaintiff allegedly slipped was visible and apparent. *See* ECF No. 35-1 at 9. In support, Defendant points to Plaintiff's testimony that he did not see the ice patch before falling. *See id.* at 9–10. Plaintiff counters that a factual question remains because the ice he slipped on was about the size of his foot, thick, and covered only by a light dusting of snow. *See* ECF No. 36 at 14.

A condition is "visible and apparent" if it is discoverable upon a reasonable inspection. *See Cuello*, 2023 WL 4763234, at *5 ("[T]he term 'visible and apparent' has been defined to cover hazards that—even if only latent—would have been discovered upon reasonable inspection."); *see also Jack v. Weiner*, 200 A.D.3d 762, 763 (N.Y. App. Div. 2021) ("If a defect could not have been discovered by a layman, even by inspection, it is considered a latent defect."); *Collins v. Walmart Stores E., LP*, No. 19-cv-1691, 2022 WL 2305342, at *13 (E.D.N.Y. June 27, 2022) ("visible and apparent" turns on whether a reasonable employee inspecting the floor would have seen the hazardous condition). "A plaintiff can establish a question of fact as to whether a condition is 'visible and apparent' by offering evidence of the condition's visibility, such as from witness testimony, surveillance video, or photographs." *McCoy v. TJX Companies, Inc.*, No. 21-cv-4907, 2023 WL 4624499, at *4 (S.D.N.Y. July 19, 2023), *aff'd,* No. 23-1159, 2024 WL 4212194 (2d Cir. Sept. 17, 2024).

The fact that Plaintiff did not see the ice before falling is not dispositive of the issue of whether the ice was visible and apparent. *See Doyle*, 234 A.D.3d at 1340; *Haskin v. United States*, No. 10-cv-5089, 2015 WL 3971730, at *9 (E.D.N.Y. June 30, 2015) ("[T]he fact that [the plaintiff] did not see any ice prior to the point at which he slipped does not definitively establish

9

the United States' lack of notice, nor does it establish that the ice was not visible and apparent as a matter of law."); *Diaz v. Calabrese*, No. 13-cv-1531, 2014 WL 6883517, at *10 (E.D.N.Y. Dec. 4, 2014) (the question "is not whether plaintiff saw the defect—presumably plaintiffs in most cases do not, or they would not have tripped and fallen—but rather whether defendants could or should have seen the defect and thus had notice of its existence.").

Plaintiff's testimony is the only evidence of the condition's visibility and apparentness. There are no photos or videos of the steps at or around the time of the incident. And FHPO employees testified that they did not recall what the steps' conditions were on February 28, 2019. *See* ECF No. 37-1 ¶¶ 28, 64. Although Plaintiff did not see the ice before falling, afterward he saw a thick patch of ice, about the same size as his foot, that had been covered by the light dusting of snow. Considering Plaintiff's undisputed description and drawing all reasonable inferences in his favor, a jury could find that the ice covered by a "light dusting of snow" would have been discovered upon a reasonable inspection by FHPO employees—especially given the types of snow removing tools, like shovels and snow blowers, at their disposal. *See Duman v. City of Buffalo*, 269 A.D.2d 848, 849 (N.Y. App. Div. 2000) (affirming denial of defendant's motion for summary judgment where plaintiff slipped on ice that was covered with a light dusting of snow, causing him to fall on a sidewalk on defendant's property). Accordingly, a reasonable jury could find the ice on the steps to have been visible and apparent.

### B. *Sufficient Length of Time to Remedy*

There is also a genuine dispute over whether the hazardous conditions on the steps existed for a sufficient length of time prior to the accident to permit Defendant's employees to discover and remedy them. The overnight storm ended by 5:06 A.M. on February 28, 2019, and Plaintiff slipped and fell approximately two hours later, at 7:15 A.M. The parties disagree as to

10

whether two hours is a "reasonable time" for the FHPO to discover the ice on the steps and remedy it.

"New York case law is scattered [] on how long the dangerous condition must have gone unnoticed. These decisions presumably reflect, *inter alia*, the varying circumstances from which such claims have arisen." *Cuello*, 2023 WL 4763234, at *5. Under the storm-in-progress doctrine, "a landowner's obligation to take reasonable measures to correct storm-created snow and ice conditions does not commence until after the storm has ceased." *Gourley v. Yarmack*, No. 21-cv-01163, 2023 WL 5625439, at *4 (E.D.N.Y. Aug. 31, 2023); *see also Cho Lun Yeung v. Selfhelp (KIV) Assocs., L.P.*, 170 A.D.3d 653, 653–54 (N.Y. App. Div. 2019) ("A person responsible for maintaining property is not under a duty to remove snow and ice until a reasonable time after cessation of the storm."). What constitutes "reasonable measures" or a "reasonable time" after cessation of the storm depends on the facts and circumstances of each case. *See Rodriguez v. Woods*, 121 A.D.3d 474, 476 (N.Y. App. Div. 2014) ("Once there is a period of inactivity after cessation of a storm, it becomes a question of fact as to whether the delay in commencing the cleanup was reasonable."). Nevertheless, the storm-in-progress doctrine does not apply where only a trace amount of snow is present. *See, e.g., Bodoff v. Cedarhurst Park Corp.*, 213 A.D.3d 802, 803 (N.Y. App. Div. 2023) (storm-in-progress doctrine not available where "only trace amounts of precipitation, totaling less than one-tenth of an inch," fell on the date of the incident).

Defendant invokes the storm-in-progress doctrine to argue that two hours is a "brief timespan" that "would not be an unreasonable amount of time for ice to remain on property after the end of a storm." ECF No. 35-1 at 13. Plaintiff maintains that there is a factual question as to whether this two-hour period was sufficient for the FHPO to take notice of the ice and remedy

11

the condition because: (i) there is no evidence of even trace amounts of precipitation in the approximately two hours leading up to the accident; (ii) the accident occurred during the FHPO's normal business hours; (iii) numerous weather forecasts in the days leading up to the morning of the accident gave notice that icy hazards would develop on the premises that day; (iv) the FHPO's internal rules and regulations stated that, if possible, snow removal should begin before the snow and ice is walked on, and special attention should be given to areas where pedestrians may slip and fall; (v) these rules and regulations were never communicated to the FHPO's custodial staff; (vi) the custodian responsible for de-icing the walkways arrived to work over 30 minutes late that morning and does not remember whether his managers told him to arrive before his 7:00 A.M. start time, which they would do on occasion when there was overnight wintry precipitation; and (vii) if the custodian had arrived on time, he would have been able to ameliorate the hazardous patch within three to five minutes of arriving to work. *See* ECF No. 36 at 16–17.

It is undisputed that only trace amounts of snow fell in the early morning hours of February 28, 2019. *See* ECF Nos. 35-8 at 2–3 (Certified Meteorological Records) (indicating 0.1 inch of snow); 36-7 at 10 (Report of Plaintiff's Meteorology Expert) (a "trace (less than 0.5 inch)" of snow and/or ice on ground surfaces was documented); 35-12 ¶ 20 (Declaration of Defendant's Meteorology Expert) ("A coating of new glaze of ice less than one tenth of an inch thick and approximately 0.3 inches of snow accumulated."). The precipitation ceased around 5:06 A.M.—approximately two hours before the post office opened for customers at 7:00 A.M. and before Plaintiff fell at 7:15 A.M. There had been advance warnings of incoming icy and slippery conditions. Regardless of whether Mr. Celik's manager instructed him to come in early or not, Mr. Celik's shift was supposed to begin at 7:00 A.M. but he did not arrive until 7:35 A.M.

12

Given these circumstances, a reasonable jury could find that two hours gave Defendant sufficient time to discover the conditions that made the steps to the FHPO's public entrance slippery, and to remedy those conditions before Plaintiff fell.

## II.     Duty To Conduct Reasonable Inspection

To prevail on a failure to inspect theory, a plaintiff must demonstrate that the defendant's inspections were unreasonable or defective in some way, *i.e.*, that a reasonable inspection would have prevented the injury. *See Taylor v. Manheim Mktg. Inc.*, No. 15-cv-01950, 2018 WL 611628, at *2 (E.D.N.Y. Jan. 29, 2018); *Silverman*, 2008 WL 1827920, at *17. "The adequacy of an owner's inspection of common areas is ordinarily a question of fact for the jury, [] provided that the plaintiff has adduced competent evidence of the defendant's failure." *Cuello*, 2023 WL 4763234, at *8; *see also, e.g., Taylor*, 2018 WL 611628, at *2 (duty to inspect is dependent on the circumstances). "In assessing the sufficiency of the evidence of the lack of a reasonable inspection, courts have considered the quality and timing of the inspection—and whether an inspection was conducted at all." *Cuello*, 2023 WL 4763234, at *9.

Plaintiff argues that FHPO employees "failed to perform even the most cursory of inspections to ensure that the premises were reasonably safe," despite weather forecasts in the days prior providing "ample notice" that subfreezing temperatures were expected overnight into February 28, 2019. ECF No. 36 at 13. Defendant counters that failure to inspect cannot replace the constructive notice requirement and that Plaintiff cannot demonstrate that a reasonable inspection would have prevented the injury. *See* ECF No. 37 at 6, 11–12.

Defendant's argument is unpersuasive. Not only does Defendant fail to cite binding authority for its argument that failure to inspect cannot replace the constructive notice requirement, *see id.* at 9, but in all the cases Defendant cites (and the authorities those cases rely

13

on), the analysis turned on the absence of evidence demonstrating how long the condition existed prior to the accident.³ That is not the situation here. It is undisputed that the icy conditions existed for approximately two hours before Plaintiff's fall, and that warnings of incoming icy conditions were provided in advance. And Plaintiff points to evidence that, *inter alia*, Mr. Celik arrived 35 minutes late that day and testified that if he had arrived to work on time, he would have been able to commence snow and ice removal on the front steps within three to five minutes of clocking in, which would have been prior to Plaintiff's accident. *See* ECF No. 36 at 13. Defendant's attempts to characterize this evidence as irrelevant are unconvincing. *See* ECF No. 37 at 10–11. Defendant also seems to argue that because Mr. Celik testified that the amount of time it would actually take him to remove snow and ice from the steps would depend on the storm, his three-to-five minute estimate is speculative. *See id.* at 11. However, it is undisputed that only trace amounts of snow fell in the early morning hours of February 28, 2019, and the ice was covered by a light dusting of snow. This does not describe a situation where hours of labor would have been required to remove snow.

---

³ *See Boccio v. Costco Wholesale Corp.*, No. 18-cv-4317, 2023 WL 2477683, at *5 (E.D.N.Y. Mar. 13, 2023) ("[A] failure to inspect theory still requires that a plaintiff show that the alleged defect existed for a sufficient period of time that a reasonable inspection could have revealed the defect to the property owner. [] Plaintiff has presented no evidence of how long the card display was allegedly in a dangerous condition."); *Taylor v. Manheim Mktg. Inc.*, No. 15-cv-01950, 2018 WL 611628, at *2 (E.D.N.Y. Jan. 29, 2018) ("Plaintiff cannot establish the length of time that the condition was there to be discovered, or even that the condition existed in the first place."); *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 279 (S.D.N.Y. 2024) ("Courts differ on whether failure to inspect is a means for establishing constructive notice or a separate obligation that displaces the need for notice when imposing premises liability. [] But under either approach, a plaintiff must still come forward with evidence showing that a reasonable inspection would have revealed the condition. [] Plaintiff has made no such showing here, because she cannot establish the length of time that the condition was there to be discovered."); *Lacey v. Target Corp.*, No. 13-cv-4098, 2015 WL 2254968, at *6 (E.D.N.Y. May 13, 2015) ("[P]laintiff has not shown that a reasonable inspection would have discovered the condition, as she cannot establish the length of time that the condition was there to be discovered.").

14

Viewing the evidence and drawing inferences in the light most favorable to the nonmovant, a reasonable jury could find that FHPO employees' failure to conduct any inspection of the front steps in the two hours prior to Plaintiff's fall to be unreasonable.

## **CONCLUSION**

For the reasons explained herein, Defendant's motion for summary judgment is DENIED.  The Court respectfully refers this case, for settlement purposes only, to Magistrate Judge Scanlon to conduct a settlement conference on a date agreed upon with Judge Scanlon.  If the parties fail to reach a settlement, the parties are directed to file a proposed joint pretrial order in accordance with Section VI.B of the Court's Individual Practices within 30 days of the settlement conference before Judge Scanlon.

SO ORDERED.

                                                  */s/ Hector Gonzalez*
                                                   HECTOR GONZALEZ
                                                   United States District Judge

Dated: Brooklyn, New York
        December 3, 2025